## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISSA WILLIAMS and HELEN COLBY, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WHITESTONE HOME FURNISHINGS, LLC, d/b/a SAATVA, 1902 Whitestone Expy, Ste 201, Whitestone, NY 11357,<br><br>Defendant. | **COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

### PREAMBLE

Plaintiffs Melissa Williams and Helen Colby ("Plaintiffs") bring this suit against Defendant Whitestone Home Furnishings, LLC d/b/a Saatva ("Saatva" or "Defendant") on behalf of themselves and others similarly situated, due to misleading and deceptive marketing representations of Saatva adult mattress products (the "Products"). The Products were represented as being sustainably made and free from any harmful substances, despite being made with materials that are associated with health and environmental concerns. This lawsuit seeks to hold Defendant accountable for its violations of N.J. Stat. § 56:8-1, and other state consumer protection laws, plus breaches of express and implied warranty and unjust enrichment.

### INTRODUCTION

1.      Saatva manufactures and sells mattresses, furniture, bedding, and bath products for adults, children, and pets, both in stores and online, to consumers across the United States.

1

2.      Saatva markets the Products to consumers as "nontoxic," "safe," "natural," "eco-friendly" and "chemical-free" (the "Representations").

3.      Saatva also uses third-party "certifications" to market itself as a sustainable company and to further assure consumers that the Products are safe and environmentally sound.

4.      Despite these representations, Saatva's mattresses are made with Polyester Fiber, Viscoelastic Polyurethane, and Rayon Fiber (the "Materials").



5.      Due to health and environmental concerns associated with these Materials, consumers would not expect them to be in the Products marketed with the Representations.

6.      Saatva's false, misleading, and deceptive misrepresentations were directed at inducing, and did induce, Plaintiffs and Class Members to purchase the Products, and to purchase them at higher prices than they otherwise would have paid, had they known the truth.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiffs and Defendant are citizens of different states.

8.     The injuries, damages, and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of New York. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of New York. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of New York.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of New York, including within this District, where Defendant is headquartered.

10.     Plaintiff Williams, a New Jersey resident, consents to this District's jurisdiction.

11.     Plaintiff Colby, a Florida resident, consents to this District's jurisdiction.

## PARTIES

12.     Plaintiff Williams is a resident of Easthampton, New Jersey, who purchased a queen-sized Saatva mattress around August 31, 2024.

13.     Plaintiff Colby is a resident of Miami, Florida, who purchased a queen-sized Saatva mattress around August 5, 2021.

14.     Plaintiffs, relying on the Representations, believed that the Product would be organic, chemical free, plastic free, and overall, be made with safe and sustainable components.

15.     Upon discovering that the Products' Materials did not match the Representations, Plaintiff Williams gave Defendant notice of her claims via a letter dated January 23, 2025.

16.     Upon discovering that Products' Materials did not match the Representations, Plaintiff Colby gave Defendant notice of her claims via a letter dated December 10, 2024.

17.    Defendant Saatva is incorporated in Delaware and has a principal place of business in New York.

18.    At all times, Saatva sold the Products nationwide and directed the Representations at consumers while knowing the truth about the Products' Materials.

## FACTUAL ALLEGATIONS

**I.    Saatva Represented That Its Products Are "Nontoxic," "Safe," "Natural," "Eco-friendly" and "Chemical-free" to Consumers.**

19.    On its website, as seen in the image below, Saatva states that the Products contain "eco-friendly materials that are better for you and the planet."[1]



20.    In addition, Saatva warrants that it "only use[s] eco-friendly foams that substitute traditional petroleum-based chemicals with 30% naturally-derived soybean & corn oils."[2]

21.    Saatva also states that its "memory foams" are certified by CertiPUR-US, which means that they "are low in volatile organic compounds (VOCs) and guaranteed to be free of toxic chemicals."[3]

---

[1] *Green Initiatives*, Saatva, https://pages.saatva.com/green-initiatives (last visited Mar. 12, 2025).
[2] *Id*.
[3] *Id*.

4

> - We only use **eco-friendly foams** that substitute traditional petroleum-based chemicals with **30% naturally-derived soybean & corn oils**
>
> - **CertiPUR-US®\* certified memory foams** are low in volatile organic compounds (VOCs) and guaranteed to be **free of toxic chemicals**

22.     Additionally, Saatva promises: "We do not use any harmful chemicals or sprays in any of our mattresses."[4]

23.     Saatva further advertises its Products as "GREENGUARD® Gold\* & eco-INSTITUT®\* certified," which according to Saatva means that the Products "meet the highest standards for low chemical emissions, helping to reduce indoor air pollutants and the risk of daily exposure to potentially harmful substances like VOCs."[5]

> - Our **GREENGUARD® Gold\* & eco-INSTITUT®\*** certified latex mattresses meet the highest standards for low chemical emissions, helping to reduce indoor pollutants and the risk of daily exposure to potentially harmful substances like VOCs

---

[4] *Mattresses*, Saatva, https://www.saatva.com/mattresses (last visited Mar. 12, 2025) (*see* Frequently asked questions: What flame retardants do Saatva mattresses use?).

[5] *Green Initiatives*, *supra* note 1.

24. Saatva also advertises other third-party certifications, such as "GOTS®* certified organic & OEKO-TEX® Standard 100* certified bedding," which is purportedly "free of potentially harmful chemicals."[6]

25. Saatva also claims that all components used in the Products are "eco-friendly," including "GOLS* organic-certified natural latex."[7]

26. Overall, Saatva entices consumers to believe its Representations with these various certifications.[8]

    

## II. The Materials That Make Up the Products Do Not Conform to the Representations.

27. Saatva mattress tags list the Materials, which include: Polyester Fiber, Viscoelastic Polyurethane, and Rayon Fiber. *See supra* ¶ 4.

28. A reasonable consumer would not know/understand what Polyester Fiber, Viscoelastic Polyurethane, and Rayon Fiber are, and would thus, assume that these Materials conform to the Representations.

29. In actuality, these Materials have health and environmental concerns that would not be expected given the Representations.

30. Polyester is a petroleum-derived, plastic-based synthetic fiber,[9] despite Saatva's promise to "substitute traditional petroleum-based chemicals." *See supra* ¶ 20.

---

[6] *Id*.
[7] *Id.*
[8] *Id.*
[9] *Polyester*, Council of Fashion Designers of America, https://cfda.com/resources/materials/detail/polyester (last visited Mar. 13, 2025).

6

31.    "Producing plastic-based fibers for textiles uses an estimated 342 million barrels of oil every year" and "the energy required to produce polyester…and the greenhouse gas emitted…make it a high-impact process."[10]

32.    Also, "[d]uring production, facilities producing polyester without treating wastewater have a high probability of causing environmental damage through the release of heavy metals, and toxic chemicals," plus, "[i]t has been estimated that around half a million tons of plastic microfibers are shed into the oceans annually during the washing of plastic-based textiles such as polyester."[11]

33.    Given these environmental issues, polyester is not "natural" nor "eco-friendly."

34.    Polyester products also tend to be contaminated with antimony,[12] a toxic heavy metal associated with eye, heart, lung, and liver problems.[13]

35.    Thus, polyester is not "nontoxic" or "safe."

36.    Viscoelastic Polyurethane is a type of memory foam or a more specific name for a certain blend of Polyurethane.[14]

37.    Viscoelastic Polyurethane is also a petroleum-derived synthetic foam[15] that contains approximately 10% added chemicals–some of which are carcinogenic.[16]

---

[10] *Id.*

[11] *Id.*

[12] Marc Biver, et al., *Antimony release from polyester textiles by artificial sweat solutions: A call for a standardized procedure*, Regul. Toxicol. Pharmacol., 119 (2021), https://doi.org/10.1016/j.yrtph.2020.104824.

[13] *Antimony - ToxFAQs*, Agency for Toxic Substances and Disease Registry (Oct. 2019), https://www.atsdr.cdc.gov/toxfaqs/tfacts23.pdf.

[14] *What is Visco Elastic Foam? Facts (Pros & Cons)*, LA Mattress (July 31, 2023), https://mattressstoreslosangeles.com/blogs/mattress-buying-guide/what-is-visco-elastic-foam.

[15] Grzegorz Węgrzyk, et al., *Viscoelastic Polyurethane Foam Biocomposites with Enhanced Flame Retardancy*, 16 Polymers 3189 (2024), https://doi.org/10.3390/polym16223189.

[16] *The Mattress Still Matters*, Clean + Healthy (July 26, 2020) at 12, https://static1.squarespace.com/static/62f48f662276bf51c7402708/t/6307bf42ba54d21e2cf8ab12/1661453108231/CLEAN-AND-HEALTHY-The-Mattress-Still-Matters.

38.    Polyurethane foam itself can also contain volatile organic compounds, which "can easily enter our air, where they can irritate eyes, nose, and throat, harm the liver, kidneys, and central nervous system and contribute to cancer."[17]

39.    Polyurethane manufacturing has also "been shown to harm the lungs of production workers."[18]

40.    Thus, Viscoelastic Polyurethane is not "nontoxic," "safe," "natural," "eco-friendly," or "chemical-free," nor is Viscoelastic Polyurethane being "substitute[d]" despite being a "petroleum-based" chemical. *See supra* ¶ 20.

41.    Finally, Rayon, while naturally derived, is a semi-synthetic fiber linked to deforestation,[19] and is therefore not "eco-friendly."

42.    Additionally, the chemical processing behind rayon production includes a "solvent" called "carbon disulfide," which is "a toxic chemical that is a known human reproductive hazard," "endanger[s] factory workers," and "pollute[s] the environment via air emissions and wastewater."[20] "The recovery of this solvent in most viscose factories is around 50%, which means that the other half goes into the environment."[21]

43.    A report states that one rayon factory "had bars on its windows due to the prevalence of workers trying to jump to their deaths. Reproductive harm has also been shown in both men and women exposed to carbon disulfide. One study even showed increase in spontaneous abortions in female workers at a rayon factory."[22]

---

[17] *Id* at 11.
[18] *Id*.
[19]    Zach Fitzner, *Deforestation for fashion: The cost of rayon*, Earth.com (June 20, 2018), https://www.earth.com/news/deforestation-fashion-rayon/.
[20] *Id*.
[21] *Id*.
[22] *Id*.

44.    Paul Blanc, author of *Fake Silk: The Lethal History of Viscose Rayon,* has stated that omitting "the fact that you can't make [rayon] without this toxic chemical [is] 'greenwashing' of the most diabolical sort."[23]

45.    All in all, none of the Materials that make up the Products are "nontoxic," "safe," "natural," "eco-friendly" and "chemical-free."

## III.    The Representations Materially Mislead Consumers.

46.    Saatva's representations that its Products are "nontoxic," "safe," "natural," "eco-friendly," and "chemical-free" are false and, therefore, inherently misleading to consumers, who care about safe and sustainable products for their families and communities. These false statements provide incorrect information, which leads consumers to buy the Products based on the incorrect information.

47.    Reasonable consumers encountering Saatva's representations emphasizing that the Products are "nontoxic," "safe," "natural," "eco-friendly," and "chemical-free" would not expect the Products to contain unsafe, unnatural, and unsustainable Materials.

48.    Consumers, for example, believe "natural" means that a product is "healthy, safe, and better for the environment."[24]

49.    Regarding environmental claims, the Federal Trade Commission ("FTC") has released "Green Guides" that "caution marketers not to make unqualified general environmental benefit claims because 'it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims.'"[25]

---

[23] *Id.*

[24] Lu Ann Williams, *Consumers Associate Natural, Organic with Clean Label*, Prepared Foods (June 14, 2022), https://www.preparedfoods.com/articles/127006-consumers-associate-natural-organic-with-clean-label.

[25] 16 C.F.R. § 260.4(b) (2012). Relatedly, the CPPA states that "when construing the term 'unfair or deceptive trade practice,'" deference should be given to "interpretation by the [FTC]." *See* D.C. Code § 28-3901(d).

50.    Consumers cannot discover the true nature of the Products from reading Saatva's websites or marketing content. Ordinary consumers lack the scientific knowledge needed to understand the Materials listed on the mattress tag.

51.    Reasonable consumers, therefore, must, and do, rely on the Representations on Saatva's website concerning the Products.

52.    Nothing about the packaging or the websites would alert a reasonable consumer to the truth about the Materials in the Products.

53.    In withholding material information, and adding false representations about the Products, Saatva deceptively and misleadingly encourages consumers to purchase the Products.

54.    Saatva knows what representations it makes in marketing the Products. Saatva also knows how the Products are sourced and produced. Saatva thus knows, knew, or should have known, the facts demonstrating that the Products are falsely represented to consumers.

55.    Saatva is aware of the consumer market trend towards safer Products. In making the false, misleading, and deceptive representations and omissions at issue, Saatva knew and intended that consumers would choose to buy, and would pay more for, goods represented to be "nontoxic," "safe," "natural," "eco-friendly," and "chemical-free," furthering Saatva's private interest of increasing sales of the Products and decreasing the sales of its competitors' mattresses that are truthfully marketed.

56.    Consumers are at risk of real, immediate, and ongoing harm if the Products continue to be sold with the misleading representations and omissions.

**CLASS ALLEGATIONS**

57.    Plaintiffs re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

58.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other similarly situated individuals within the United States (the "Class"), defined as follows: all consumers who purchased the Products within the United States during the applicable statute of limitations period (the "Class Period") and until the date of class certification.

59.     Included in the Class, to the extent necessary, is a subclass of all persons who purchased the Products (as defined herein) in New Jersey during the Class Period (the "New Jersey Subclass").

60.     Included in the Class, to the extent necessary, is a subclass of all persons who purchased the Products (as defined herein) in Florida during the Class Period (the "Florida Subclass").

61.     Excluded from the Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

62.     There are substantial questions of law and fact common to all members of the Class, which will predominate over any individual issues. These common questions of law and fact include, without limitation:

(a)     Whether Defendant is responsible for the marketing at issue;

(b)     Whether the marketing of the Products was unfair, misleading, false, deceptive, fraudulent, and/or unlawful;

(c)     Whether the sale of the Products in contexts where sale was unlawful, unfair, misleading, false, deceptive, fraudulent, and/or unlawful;

(d)     Whether Defendant was unjustly enriched; and

(e)     Whether Defendant's conduct as set forth above injured Plaintiffs and Class members.

63.    Plaintiffs' claims are typical of the claims of the Class. Plaintiffs are a member of a well-defined class of similarly situated persons, and the members of the Class were similarly affected by Saatva's conduct and are owed the same relief, as alleged in this Complaint.

64.    The precise number of the Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.

65.    Plaintiffs will fairly and adequately protect the interests of the Class and has no interests that are antagonistic to the claims of the Class. Plaintiffs will vigorously pursue the claims of the Class and Subclass.

66.    Plaintiffs have retained counsel who are competent and experienced in consumer protection litigation, including class actions relating to false advertising. Plaintiffs' counsel has successfully represented plaintiffs in complex class actions and currently represents plaintiffs in similar complex class action lawsuits involving false advertising.

67.    A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of Plaintiffs and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

68.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action will benefit the parties and reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or

thousands of separate lawsuits. Trial of Plaintiffs' and the Class members' claims together is manageable.

69.     No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

70.     The prerequisites to maintaining a class action for equitable relief are met. Defendant intentionally targets consumers to purchase the Products; Defendant markets, sells, and allows the sale of the Products nationwide; Defendant makes Representations about the Products despite knowing that the Materials that make up the Products have health and environmental concerns; Defendant designed the Products; and Defendant oversees the manufacturing and distribution of the Products. The Products, as designed and distributed by Defendant, are still in circulation, the Representations are live and continue to pose a risk of harm to consumers, and Defendant has a continuing responsibility to mitigate or prevent that harm. Defendant continues to benefit from sales by resellers, including ongoing brand advertising and visibility, licensing fees and royalties, residual profits from inventory sales, and continued distribution and sale of the Products. Defendant is, therefore, responsible for how the Products are marketed, labeled, and represented to consumers and are responsible for ensuring issues with the Products are addressed, including misleading representations and omissions, safety concerns, and regulatory compliance, regardless of when or how the Product is sold. Defendant, therefore, has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

71.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Saatva.

Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

72.    Defendant's conduct is generally applicable to the Class as a whole, and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Saatva's systematic policies and practices make declaratory relief appropriate with respect to the Class as a whole.

73.    Defendant's improper consumer-oriented conduct is misleading in a material way in that the marketing, *inter alia*, induced Plaintiff Williams, New Jersey Subclass members, Plaintiff Colby, Florida Subclass members, and all Class members to purchase and/or to pay the requested price for the Products, and caused them to continue buying the Products, when they otherwise would not have purchased the Products, would not be continuing to buy the Products, or would not be paying the requested price.

74.    Defendant made the misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

75.    Plaintiff Williams, the New Jersey Subclass members, Plaintiff Colby, Florida Subclass members, and the Class members have been injured by their purchase of the Products, which they otherwise would not have purchased and would not be continuing to buy, which were worth less than what they bargained and/or paid for, which they paid the requested price for, and which they selected over other products that may have been truthfully marketed.

76.    Saatva's advertising induced Plaintiff Williams, New Jersey Subclass members, Plaintiff Colby, Florida Subclass members, and all the Class members to purchase the Products, to buy more of them and continue buying them, and/or to pay the price requested.

77.     As a direct and proximate result of Defendant's violation of law, Plaintiff Williams, members of the New Jersey Subclass, Plaintiff Colby, Florida Subclass members, and all Class members paid for falsely advertised Products and, as such, have suffered damages in an amount to be determined at trial.

78.     Injunctive relief is also appropriate in this case because Plaintiff Williams, members of the New Jersey Subclass, Plaintiff Colby, Florida Subclass members, and other Class members have through Defendant's conduct purchased the falsely advertised Products. Plaintiffs and other Class members have a strong interest in having full disclosure regarding the Products. Plaintiffs and other Class members wish to be able to purchase the Products when the need for a new mattress arises again. Because future harm is likely at the hands of Defendant, injunctive relief is appropriate in this case.

79.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I
**Violation of the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq***
**(On behalf of Plaintiff Williams and the New Jersey Subclass)**

80.     Plaintiff Williams realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

81.     Defendant engaged in deceptive acts or practices in the conduct of its business by misrepresenting and omitting material facts about the Products.

82.     As a result, Plaintiff Williams and New Jersey Subclass Members suffered damages, including the premium paid for the Products.

83.    The Products are considered "merchandise" within the meaning of N.J. Stat. § 56:8-1(c).

84.    Plaintiff Williams and the other New Jersey Subclass members are "persons" within the meaning of N.J. Stat. § 56:8-1(d).

85.    The New Jersey Consumer Fraud Act prohibits "deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission" in connection with the sale or advertisement of any merchandise. N.J. Stat. § 56:8-2.

86.    Defendant violated the New Jersey Consumer Fraud Act by making Representations regarding the Products, despite the presence of the Materials in the Products. Not only are the Representations material to consumers but reasonable consumers would not expect the Materials to be unsafe and unsustainable substances.

87.    As a result of Defendant's deceptive practices, Plaintiff Williams and the New Jersey Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the Products had been misrepresented as described above.

88.    Plaintiff Williams and the other New Jersey Subclass members demand judgment pursuant to N.J. Stat. § 56:8-19 against Defendant for treble damages and other statutory remedies made available under the New Jersey Consumer Fraud Act.

89.    Through its conduct, Defendant has violated, and continues to violate, the New Jersey Consumer Fraud Act, which makes deception, fraud, false promise, and/or misrepresentation of goods unlawful. As a direct and proximate cause of Defendant's violation

of the New Jersey Consumer Fraud Act, as described above, Plaintiff Williams and the other New Jersey Subclass members have suffered damages.

## COUNT II
**Violation of Florida's Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201-213**
**(On Behalf of Plaintiff Colby and The Florida Subclass)**

90.    Plaintiff Colby hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

91.    Plaintiff Colby brings this claim individually and on behalf of the members of the proposed Florida Subclass against Defendant.

92.    Plaintiff Colby brings this claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

93.    The FDUTPA renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.204.

94.    Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

95.    While FDUTPA does not define "deceptive," or "unfair," Florida courts have looked to the Federal Trade Commission's interpretations for guidance. "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (internal quotations and citations omitted). Courts define a "deceptive trade practice" as any act or practice that has the

tendency or capacity to deceive consumers. *Fed. Trade Comm'n v. Partners In Health Care Ass'n, Inc.*, 189 F. Supp. 3d 1356, 1367 (S.D. Fla. 2016). Courts define an "unfair trade practice" as any act or practice that "offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injuries to consumers." *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Sols., Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010).

96.    Defendant engaged in a deceptive act and/or unfair trade practice by marketing the Products with the Representations despite manufacturing the Products with the Materials, which contradict the Representations.

97.    Defendant intended that Plaintiff Colby and the Florida Subclass would rely upon its deceptive Representations, and a reasonable person would in fact be misled by this deceptive conduct, as a reasonable consumer is not expected to know the science behind the Products' Materials.

98.    Plaintiff Colby and the members of the Florida Subclass have been damaged by Defendant's conduct alleged herein because they would not have purchased the Products but for Defendant's unfair and/or deceptive trade practice.

99.    Therefore, Plaintiff Colby and members of the Florida Subclass have suffered injury in fact, including the full price of the Products purchased.

100.   By committing the acts alleged above, Defendant engaged in unconscionable, deceptive, unfair acts or practices, and unfair competition within the meaning of FDUTPA.

101.   Defendant's conduct is substantially injurious to consumers. Consumers are purchasing Products, without knowledge that the Representations are false. This conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have purchased the Products but for Defendant's false labeling, advertising, and promotion. Thus,

18

Plaintiff Colby and members of the Florida Subclass have been "aggrieved" (i.e., lost money) as required for FDUTPA standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

102.    Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on the Representations that Saatva's Products will conform to those Representations, consumers could not have reasonably avoided such injury.

103.    Further, Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

104.    As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff Colby and the members of the Florida Subclass have sustained damages in an amount to be proven at trial.

**COUNT III**
**Violation of State Consumer Protection Statutes**
**(on Behalf of Plaintiffs and All Class Members)**

105.    Plaintiffs reallege and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

106.    Defendant's unfair, false, misleading, and fraudulent practices in marketing the Products, as alleged herein, violate each of the following state consumer protection statutes to the extent that Defendant's Products have been marketed in, and purchased by Class members in, the respective states: Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Ariz. Rev. Stat. § 44-1522; Ark. Code § 4-88-107(a), (a)(10); Cal. Civ. Code § 1750, Cal. Bus. & Prof. Code §§ 17200, 17500, 17580.5; Colo. Rev. Stat. §§ 6-1-105 (e), (g); Conn. Gen. Stat.§ 42-110b(a); Del. Code Ann. tit. 6, § 2513(a); Fla. Stat. Ann. § 501.204; Ga. Code § 10-1-393(a); Haw. Rev. Stat. § 480-2(a), (d); Idaho Code § 48-603(17); 815 Ill. Comp. Stat. Ann. § 505/2; Ind. Code § 24-5-0.5-3(a);

Iowa Code § 714H.3(1); Kan. Stat. § 50-626(a); Ky. Rev. Stat. § 367.170; La. Rev. Stat. Ann. § 51:1405(A); Me. Rev. Stat. Ann. tit. 5 § 207; Md. Code Comm. Law § 13-301(1), (3); § 13-303; Mass. Gen. Laws Ch. 93A, § 2(a); Mich. Comp. Laws Ann. § 445.903(1)(s), (bb), (cc); Minn. Stat. § 325F.69(1); Miss. Code § 75-24-5(2)(e),(g); Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; Neb. Rev. Stat. § 59-1602; Nev. Rev. Stat. § 598.0915(15); N.H. Rev. Stat. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.M. Stat. Ann. §§ 57-12-2(D), 57-12-3; N.Y. Gen. Bus. Law §§ 349, 350; N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-15-02, 51-15-02.3; Ohio Rev. Code § 1345.02; Okla. Stat. Ann. tit. 15, §§ 753, 752(13); Or. Rev. Stat. § 646.608(1); 73 Pa. Stat. § 201-2(4); R.I. Gen. Laws §§ 6-13.1-1(6)(xii), (xiii), (xiv), 6-13.1-2; S.C. Code § 39-5-20(a); S.D. Codified Laws § 37-24-6(1); Tenn. Code § 47-18-104(a); Tex. Bus. & Com. Code § 17.46(b)(2),(3),(5),(7),(24); Utah Code Ann. § 13-11-4(1); Vt. Stat. Ann. tit. 9, § 2453(a); Va. Code Ann. § 59.1-200(A)(14); Wash. Rev. Code § 19.86.020; W. Va. Code §§ 46A-6-102(7); Wis. Stat. Ann. § 100.18(1); Wyo. Stat. Ann. § 40-12-105(a)(xv).

107.    Defendant made the misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

108.    Plaintiffs and all other Class members have been injured by their purchase of the Products.

109.    As a direct and proximate result of Defendant's violation of consumer protection law, Plaintiffs and all other Class members have suffered damages in an amount to be determined at trial.

110.    On December 10, 2024, and January 23, 2025, pre-suit letters were sent to Defendant via electronic mail that provided notice of Defendant's violations of state consumer protection statutes and demanded that Defendant corrects, repairs, replaces, or otherwise rectifies

the unlawful, unfair, false, and/or deceptive practices complained of herein. The letters also stated that if Defendant refused to do so, a complaint seeking damages would be filed. Counsel for Defendant and Plaintiffs met and conferred on the pre-suit letter. Accordingly, Plaintiffs, on behalf of themselves and all other members of the Class, seek compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices, according to the availability of relief under the applicable statutes.

### COUNT IV
**Breach of Express Warranty**
**(on Behalf of Plaintiffs and All Class Members)**

111.    Plaintiffs reallege and reincorporates by reference all paragraphs alleged above.

112.    Plaintiffs bring this claim individually and on behalf of all Class Members.

113.    Defendant provided Plaintiffs and other members of the Class with written, express warranties that the Products conformed with the Representations via Defendant's website, which is easily accessible to any consumer. *See supra* § I.

114.    These affirmations of fact or promise by Defendant related to the goods and became part of the basis of the bargain.

115.    Plaintiffs and members of the Class purchased the Products believing them to conform to the express warranties.

116.    Defendant breached these warranties, resulting in damages to Plaintiffs and other members of the Class, who bought Defendant's Products but did not receive the goods as warranted.

117.    As a proximate result of the breach of warranties by Defendant, Plaintiffs and the other members of the Class did not receive the goods as warranted. Moreover, had Plaintiffs and the Class members known the true facts, they would not have purchased Defendant's Products,

or would have purchased the Products on different terms, or would have purchased fewer of the Products.

118.    Notice of these breaches of warranty was provided to Defendant on December 10, 2024, and January 23, 2025, as described *supra*, which is incorporated here by reference as if fully set forth herein.

119.    Plaintiffs and the members of the Class, therefore, have been injured and have suffered damages in an amount to be proven at trial.

### COUNT V
**Breach of Implied Warranty**
**(on Behalf of Plaintiffs and All Class Members)**

120.    Plaintiffs reallege and incorporate herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

121.    Plaintiffs bring this claim individually and on behalf of the Members of the proposed Class and Subclasses against Defendant.

122.    The Class will proceed under New York law, while the Subclasses will proceed, in the alternative, according to the state law where the purchases were made.

123.    Defendant routinely engages in the manufacture, distribution, and/or sale of the Products and are merchants that deal in such goods or otherwise hold themselves out as having knowledge or skill particular to the practices and goods involved.

124.    Plaintiffs and Members of the Class and Subclasses were consumers who purchased Defendant's Products for the ordinary purpose of such products. In the alternative, Defendant marketed the Products, and Plaintiffs and Members of the Class and Subclasses purchased the Products, for the specific purpose of receiving mattresses whose Materials conform to the Representations but received far less.

125.    By representing that the Products would conform to the Representations, Defendant impliedly warranted to consumers that the Products were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

126.    The Products, however, were not of the same average grade, quality, and value as similar goods sold under similar circumstances due to the presence of the Materials. Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the Product description.

127.    As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class and Subclasses were injured because they paid money for the Products that would not pass without objection in the trade or industry under the contract description.

**COUNT VI**
**Unjust Enrichment**
**(on Behalf of Plaintiffs and All Class Members)**

128.    Plaintiffs reallege and reincorporates by reference all paragraphs alleged above.

129.    Plaintiffs bring this claim individually and on behalf of the Class.

130.    To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

131.    Plaintiffs and the members of the Class conferred benefits on Defendant by purchasing the Products.

132.    Defendant was unjustly enriched by receipt of these revenues derived from the purchases of Plaintiffs and the members of the Class.

133.    Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented its Products as made with safe and sustainable components, when the Materials that make up the Products are indeed, not safe or sustainable.

134.  Plaintiffs and members of the Class were damaged by Defendant's misrepresentations because they would not have purchased the Products if the true facts were known.

135.  Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and the members of the Class is unjust and violates the fundamental principles of justice, equity, and good conscience, Defendant has been unjustly enriched in an amount to be determined at trial.

136.  Plaintiffs and the members of the Class have no adequate remedy at law.

## JURY TRIAL DEMAND

137.  Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and in favor of the Class as follows:

A.  An order certifying the proposed Class and Subclasses; appointing Plaintiff Williams as representative of the Class and New Jersey Subclass; appointing Plaintiff Colby as representative of the Class and Florida Subclass; and appointing Plaintiffs' undersigned counsel as counsel for the Class and Subclasses;

B.  A declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C.  An order declaring that Defendant's conduct violates the statutes referenced herein;

D.    An order awarding monetary damages, including actual damages, statutory damages, compensatory, and punitive damages, in the maximum amount provided by law under the common law and the statutes named herein;

E.    Injunctive relief;

F.    An order for prejudgment interest on all amounts awarded;

G.    An order awarding Plaintiffs and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

H.    Any further relief that the Court may deem appropriate.


DATED: March 19, 2025                          Respectfully submitted,


                                               _____
                                               Kim E. Richman
                                               **RICHMAN LAW & POLICY**
                                               1 Bridge Street, Suite 83
                                               Irvington, NY 10533
                                               T: (914) 693-2018
                                               krichman@richmanlawpolicy.com

                                               *Attorney for Plaintiff*